Filed 9/24/18; pub. & mod. order 10/12/18 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D072019 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD264165) |
| KEVIN MEGOWN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge. Affirmed and remanded with directions.

John E. Edwards, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Asistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Mary K. Strickland, Deputy Attorneys General, for Plaintiff and Respondent.

Kevin Megown beat Michelle R., the mother of his child. After one incident where Michelle's mother, Maria R., came to aid her, Megown threatened to kill both of

them as he held a gun. A jury convicted Megown of violating a domestic violence restraining order (Pen. Code, § 273.6, subd. (a)), possessing an assault weapon (Pen. Code, § 30605, subd. (a)), and inflicting corporal injury on a cohabitant (Pen. Code, § 273.5 subd. (a)). It also found true allegations that he inflicted great bodily injury (Pen. Code, § 1192.7, subd. (c)(8)) in circumstances involving domestic violence (Pen. Code, § 12022.7, subd. (e)). The jury also acquitted on some counts and could not reach a verdict on several others. Megown was retried on some of the unresolved counts.

A second jury convicted Megown of inflicting corporal injury on a cohabitant (Pen. Code, § 273.5 subd. (a)), three counts each of criminal threats (Pen. Code, § 422), and assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)). The jury also found true allegations that Megown personally used a firearm (Pen. Code, §§ 1192.7, subd. (c)(8), 12022.5, subd. (a)). The trial court sentenced Megown to a total term of 17 years in prison.

Megown claims the trial court erred by: (1) admitting past uncharged acts of domestic violence under Evidence Code section 1109 with respect to the counts involving Maria, (2) admitting evidence of abuse that occurred more than 10 years before the charged crimes, (3) giving CALCRIM No. 875 (assault with a firearm) without modification, and (4) failing to stay the sentence on one of the criminal threats counts under Penal Code section 654. He also claims that the abstract of judgment should be amended to accurately reflect the trial court's oral pronouncement and that the cumulative effect of the above errors require reversal.

We agree that the trial court erred when it failed to stay the sentence on one of the criminal threats counts under Penal Code section 654 and that the abstract of judgment should be corrected. In a supplemental brief, Megown argues that the matter must be remanded to the trial court so it may exercise its discretion in determining whether to strike the firearm enhancements. We agree and remand for this limited purpose. We reject his remaining arguments.

## FACTUAL BACKGROUND

Megown and Michelle started dating in 1998. They had a child together in 2010 and began living together in 2012. Over the course of her 16-year relationship with Megown, Michelle estimated that he became physically violent with her about 10 times each year. Lauren A. lived next door to the couple from 2013 until approximately 2016. She recalled hearing Michelle yell about Megown not being at home and not being engaged with the couple's son. On three or four occasions she heard Megown yell that he was going to kill Michelle. She remembered three incidents when she heard a commotion at the couple's home, like furniture moving and something being thrown against furniture.

*2014 Incident Against Michelle—Count 1*

On a day in March 2014 the couple argued about Michelle's claims that Megown did not spend time with their son, did not provide financial support, and had sex with prostitutes he met online. The argument turned physical when Megown grabbed Michelle by her neck with both hands and forced her to the floor. Megown told her that he was going to kill her, that he hated her, and that she was a "cunt." Eventually,

3

Michelle lost consciousness. She later went to the hospital due to her painful injuries. She lied to the hospital staff about the cause of her injuries, claiming that a stranger had grabbed her by the neck. The examining doctor concluded that Michelle's injuries were consistent with strangulation.

*2015 Incident Against Michelle—Counts 9 to 11*

On a day in July 2015 Megown and Michelle argued because she had spent the day at Comic Con. Megown became enraged, told her "I'm going to kill you," grabbed her, and slammed her into a wall. He put both of his hands around her neck and pinned her against the wall as he continued to say he would kill her and that he hated her. Megown punched Michelle in the face and in the back of her head several times. He also kicked her in her lower back and hips as he told her that he wanted to kill her. Michelle was "very afraid."

Megown picked Michelle up and threw her against a door, knocking her unconscious. When Michelle regained consciousness, Megown was dragging her across the floor while stating, "I'm going to fucking kill you. I'm going to kill you. I fucking hate you." When Michelle attempted to flee, Megown grabbed her by the neck and slammed her onto the couch. Eventually, Michelle dropped to the floor. Michelle then heard clicking and knew that Megown had retrieved his gun. Megown pointed the gun at her stating that he was going to kill her and that, as Michelle looked toward the door, "If that door moves I'm putting a round through you." Megown's finger was on the trigger—something he had told Michelle to do only when ready to shoot. With the gun pointed at Michelle's head he repeated, "I'm going to kill you." When Megown finally walked

4

away, Michelle called Maria for help. She did not call the police because Megown had told her over the years that if she called the police he would claim she attacked him, that she was a bad mother, and that her son would be taken away.

*2015 Incident Against Michelle and Maria—Counts 12 to 15 and 17*

When Maria arrived she confronted Megown and asked him what he had done. Megown retrieved his gun and pointed it at Maria's head with his finger on the trigger. Megown said, "Fuck you, you fucking cunt, I'll kill you." He then alternated pointing the gun at each victim's forehead. Megown stated that he was going to kill both Michelle and Maria as he did this. The women fled when Megown went into the bedroom, but they did not call the police because Megown had threatened to kill them if they did. Although Maria wanted to call the police, Michelle told her that she would not talk to the police because she was afraid of Megown and afraid for her son. Michelle took photographs of her injuries.

*Disobeying Court Order—Count 18*

In August 2015 Michelle obtained a restraining order against Megown. He was served with the order the same day. The order specified that Megown was not to go to the couple's shared home. About an hour after being served with the order, Megown drove to their home. Michelle and Maria locked themselves inside the house and barricaded the door. Michelle called 911 as Megown attempted to force his way into the house. Megown fled when Michelle yelled that the police were on their way.

*Prior Unreported and Uncharged Incidents of Domestic Violence*

At trial, the prosecutor asked Michelle about five prior instances of domestic violence that were not charged in the case. In 2004 an argument turned physical when Megown threw her on a futon, pinned her down and eventually grabbed her neck. In 2007 Megown threw a full water bottle at Michelle while the couple argued about his drinking. When Michelle started yelling, Megown threw her to the floor, pinned her down with his knee on her back and struck her twice. In 2008 Michelle got upset when Megown's father came into the couple's hotel room intoxicated. While arguing, Megown threw her against the wall, onto the bed and then the floor. In 2012, while arguing about finances, Megown grabbed Michelle by the neck, shook her and told her to shut up. Finally, in 2013 the couple argued about his drinking as they left a baseball game. Megown grabbed Michelle's throat and pinned her against the car window until she lost consciousness.

*Defense Evidence*

Megown was not asked about, or did not remember, the uncharged incidents relayed by Michelle. Nonetheless, he admitted that there were times when he and Michelle became physical during arguments. On the day of the 2015 charged incidents, Megown remembered arguing with Michelle about Comic Con. Megown claimed that Maria came over carrying a machete and that he barricaded himself in the bedroom. He denied drawing a gun on Michelle or Maria and claimed that he never threatened to kill Michelle and Maria that evening. When asked whether he had ever threatened to kill Michelle, Megown responded, "Never."

Megown admitted that he and Michelle got physical with each other during arguments. He also admitted that he went to the couple's joint home after being served with the restraining order to retrieve his belongings thinking that Michelle would not be there. When he tried to unlock the front door, Michelle and Maria started yelling at him. He left and drove to a police station.

DISCUSSION

I. *ALLEGED EVIDENTIARY ERROR*

A. *Additional Background*

The prosecution filed a pretrial motion seeking to introduce Megown's prior acts of violence against Michelle beginning in 1999 as propensity evidence under Evidence Code[1] section 1109, subdivision (a)(1), and section 1101, subdivision (b) (section 1101(b)), as evidence of Megown's intent to harm Michelle, his motive to control her, and his common plan and scheme.

Prior to the second trial the court conducted a section 352 analysis and ruled that Megown's pattern of violence was "highly relevant" and "not unduly inflammatory." The trial court noted that the past incidences were "at most" equivalent to or less egregious than the charged acts. The court stated that it had allowed evidence to be presented at the first trial that the physical abuse started in 1999 and again concluded that Michelle could testify that the pattern of abuse began in 1999, but that she could not describe details until the 2004 incident. Defense objected to this evidence under section 352.

---

[1] All undesignated statutory references are to the Evidence Code.

7

B. *General Legal Principles*

Ordinarily, evidence of prior criminal acts is inadmissible to show a defendant's disposition to commit such acts. (§ 1101, subd. (a).) An exception to this rule exists for cases involving domestic violence. (§ 1109, subd. (a)(1).) In enacting section 1109, the Legislature "considered the difficulties of proof unique to the prosecution of [domestic violence cases] when compared with other crimes where propensity evidence may be probative but has been historically prohibited." (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1333-1334.)

Section 1101 does not prohibit "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident . . .) other than his or her disposition to commit such an act." (§ 1101(b).) Additionally, "[n]othing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness." (§ 1101, subd. (c).)

Evidence admissible under section 1101(b) or section 1109 is subject to exclusion under section 352 if the probative value of the evidence is outweighed by a danger of undue prejudice. (See *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095.) " 'The "prejudice" referred to in . . . section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the

8

jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 439.)

"The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) The record must affirmatively show that the trial judge did in fact weigh prejudice against probative value, but no more is required. (*People v. Clair* (1992) 2 Cal.4th 629, 660.) We review the trial court's exercise of discretion in admitting evidence under section 352 for abuse and will not disturb the court's ruling "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

C. *Analysis*

1. *Admission of uncharged crimes evidence for counts against Maria*

Megown asserts that the court abused its discretion in allowing his prior uncharged acts of domestic violence into evidence to resolve the counts as to Maria. He notes that the court failed to consider whether the prior acts of domestic violence that he committed against Michelle could be admitted under section 1109 or section 1101(b) as to the counts involving Maria, counts that he claims did not involve domestic violence. Thus, he claims that the court abused its discretion by failing to make a reasoned determination

9

that this evidence was admissible as to Maria under either section 1109 or 1101(b). We disagree.

Section 1109 provides, in relevant part, "in a criminal action in which the defendant *is accused of an offense involving domestic violence*, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a), italics added.) Evidence Code section 1109 defines "domestic violence" by referencing Penal Code section 13700 and Family Code section 6211. (§ 1109, subd. (d)(3).) Under Penal Code section 13700, subdivision (b), " '[d]omestic violence' means abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." Under Family Code section 6211, " '[d]omestic violence' is abuse perpetrated against any of the following persons: [¶] (a) A spouse or former spouse. [¶] (b) A cohabitant or former cohabitant, as defined in [Penal Code] Section 6209. [¶] (c) A person with whom the respondent is having or has had a dating or engagement relationship. [¶] (d) A person with whom the respondent has had a child, where the presumption applies that the male parent is the father of the child of the female parent under the Uniform Parentage Act (Part 3 (commencing with [Penal Code] Section 7600) of Division 12). [¶] (e) A child of a party or a child who is the subject of an action under the Uniform Parentage Act, where the presumption applies that the male parent is the father of the child to be protected. [¶] (f) Any other person related by consanguinity or affinity within the second degree."

10

In turn, Penal Code section 13700 defines "[a]buse" as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, *or another*." (Pen. Code, § 13700, subd. (a), italics added.) The court instructed the jury with CALCRIM No. 852 which proved these definitions of "domestic violence" and "abuse."

The application of section 1109 to the present case turns on whether Megown was "accused of an offense involving domestic violence." (§ 1109, subd. (a)(1).) Here, Megown was accused of assaulting with a firearm and threatening Michelle (his cohabitant) and Maria (his cohabitant's mother) in a single incident where both victims were present. Megown argues that his prior acts of domestic violence were improperly admitted into evidence to prove his crimes against Maria because Maria is not within the class of persons to whom section 1109 applies.

This argument, however, ignores the language of section 1109, which allows the introduction of prior domestic crimes evidence "in a criminal action in which the defendant is accused of an offense *involving* domestic violence . . . ." (§ 1109, subd. (a), italics added.) Being "accused of an offense involving domestic violence" is broader than domestic violence which is defined as abuse committed against one of certain defined individuals. To "involve" means "to include, contain, or comprehend within itself or its scope." (Random House Unabridged Dict. (2d ed. 1993) p. 1005.)

Here, Megown's crimes against Maria took place in Michelle's presence. When Megown pointed a gun at Maria's head and threatened to kill her, Michelle was reasonably apprehensive about imminent injury to Maria. Because Megown's crimes

11

against Maria took place in Michelle's presence, they were crimes that *involved* domestic violence. While the focus of section 1109 is to protect domestic violence victims by allowing them to show a pattern of abuse, nothing in section 1109 precluded the introduction of such evidence in these circumstances. Accordingly, the trial court did not err in instructing the jurors that they could consider Megown's prior acts of domestic violence as to the crimes charged against Maria.

Megown also contends the trial court erred in allowing the jury to consider his history of domestic violence as to the crimes against Maria under section 1101(b) because motive, plan, or scheme was not material to those counts.

"A 'motive' is defined as a '[c]ause or reason that moves the will and induces the action[,]' '[a]n inducement, or that which leads or tempts the mind to indulge a criminal act.' [Citation.] Motive is an intermediate fact which may be probative of such ultimate issues as intent [citation], identity [citation], or commission of the criminal act itself [citation]." (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1017-1018.) " '[T]he intermediate fact of motive' may be established by evidence of 'prior dissimilar crimes.' " (*Id.* at p. 1018.)

Here, evidence that Megown committed uncharged acts of domestic violence toward Michelle in the past was relevant to prove that Megown not only threatened and assaulted Michelle with a firearm during the 2015 incident, but that he also committed these crimes toward Maria when Maria came to Michelle's aid. The evidence also tended to prove a common plan or scheme of threatening victims to prevent them from contacting the police.

12

Moreover, even if we were to agree that Megown's acts toward Maria did not constitute domestic violence within the meaning of section 1109 and that this evidence was also inadmissible as to the counts pertaining to Maria under section 1101(b), we would not reverse. Error in admitting evidence of a defendant's prior acts of domestic violence under sections 1109 or 1101 is subject to the standard of prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (See *People v. Ogle* (2010) 185 Cal.App.4th 1138, 1145 [any error in admitting uncharged act of domestic violence was harmless under *Watson*]; *People v. Welch* (1999) 20 Cal.4th 701, 750 [admission of evidence prohibited by § 1101 is reviewed under the *Watson* harmless error standard].) Under the *Watson* test, the trial court's judgment may be overturned on appeal only if the defendant shows "it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (*Watson*, at p. 836.)

Here, Megown does not dispute that the prior domestic crimes evidence was admissible as to all of the charged crimes against Michelle. As to the 2015 incident involving both Michelle and Maria, the jury needed to assess the credibility of Michelle's and Maria's versions of the incident versus Megown's version of the incident. Michelle and Maria gave corroborating accounts of the 2015 incident and a neighbor testified regarding Megown's use of death threats. The jury's guilty verdicts for the 2015 charges show that the jury believed Michelle and Maria. It is not reasonably probable that Megown would have obtained a better result if the trial court had instructed the jury that the prior domestic crimes evidence was not to be considered as to the crimes alleged where Maria was the victim. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

13

## 2. *Admission of remote evidence*

Megown asserts the trial court erred in admitting evidence of his abuse of Michelle that occurred more than 10 years before the charged crimes. Specifically, he argues the trial court erred in allowing Michelle to testify (1) that the abuse started in 1999 and occurred about 10 times a year, and (2) about an incident that occurred in 1999 where Megown pushed Michelle against a wall and then threw her on a couch (together the remote evidence). He asserts this testimony was presumptively inadmissible under section 1109, amounted to bad character evidence, and undermined his defense.

"Evidence of acts occurring more than 10 years before the charged offense is inadmissible . . . unless the court determines that the admission of this evidence is in the interest of justice." (§ 1109, subd. (e).) The statute "clearly anticipates that some remote prior incidents will be deemed admissible and vests the courts with substantial discretion in setting an 'interest of justice' standard." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 539.) "[T]he 'interest of justice' exception is met where the trial court engages in a balancing of factors for and against admission under section 352 and concludes . . . that the evidence was 'more probative than prejudicial.' " (*Id.* at pp. 539-540.) We review the court's ruling for abuse of discretion. (*Id.* at p. 539.)

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159.) Critically, section 1109 is "an express exception to the prohibition against [bad character or] propensity evidence set forth in . . . section 1101, subdivision (a)." (*People v. Fruits*

(2016) 247 Cal.App.4th 188, 202.)  "[T]he statute reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation.  [Citation.]  Indeed, proponents of the bill that became section 1109 argued for admissibility of such evidence because of the 'typically repetitive nature' of domestic violence.  [Citations.]  This pattern suggests a psychological dynamic not necessarily involved in other types of crimes."  (*Johnson*, *supra*, 185 Cal.App.4th at p. 532, fns. omitted.)

The trial court, which allowed Michelle to state that the abuse started 16 years earlier and was continuous, recognized the unique "probative value" of such evidence to establish a "pattern of . . . violence" and found the evidence "highly relevant."  We agree; this evidence created a strong inference that Megown had a propensity to commit the acts that Michelle described.  This history of abuse was also relevant to Michelle's fear and her earlier refusals to seek help or call the police.  Moreover, Michelle's generalized statements and the brief details provided about the 1999 incident were less aggravated or inflammatory than the charged offenses.  There is no reasonable likelihood that the result would have been more favorable to Megown had the trial court excluded the 1999 incident and the testimony that Megown regularly became physically violent with Michelle thereafter.  The trial court acted well within its discretion in admitting the remote evidence in the interests of justice.

Megown claims the trial court erred by failing to inquire into the specifics of this evidence to determine whether the prior incidents even qualified as domestic violence.  Based on this failure, he contends the trial court lacked the information to evaluate the

15

admissibility of the remote evidence under section 352. In his motions in limine, Megown objected to the remote evidence under section 352 and requested a "pretrial hearing" to litigate the admissibility of the prior incidents outside the presence of the jury.

At the hearing on the in limine motions the trial court conducted a section 352 analysis after defense counsel reiterated his objection under section 352. At the hearing, defense counsel never expressed a concern that the prior incidents did not qualify as domestic violence, nor did he request a section 402 hearing to litigate this issue. By failing to raise his request for a pretrial hearing under section 402 when the court ruled on the in limine motions or before Michelle testified, defense counsel forfeited his request. (See *People v. Williams* (1997) 16 Cal.4th 153, 196 ["[T]he trial court was not bound to provide, unprompted, additional hearings under . . . section 402 merely because it had earlier suggested it would do so 'at the appropriate time.' "].)

## II. *ALLEGED INTRUCTIONAL ERROR*

### A. *Instruction Regarding Uncharged Crimes Evidence*

#### 1. *Additional background*

Before allowing the jury to hear evidence regarding Megown's uncharged acts the court told counsel that it would be reading the jury a "shortened version" of CALCRIM No. 852 regarding the use of uncharged domestic violence evidence. Neither counsel objected to the court's proposal. As relevant here, the court deviated from CALCRIM No. 852 by inserting into the instruction that jurors could use the uncharged acts of domestic violence evidence to determine that Megown "was likely to commit and did commit . . . any of the charged offenses that you are here to decide." It then told the jury

16

that if they decided Megown had committed the uncharged offenses they could consider the evidence "in deciding whether or not: [¶] 1. The defendant acted with the intent that his threats to kill or cause great bodily injury to Michelle [R.] be understood as a threat pursuant to Penal Code section 422 in this case; [¶] 2. The defendant had a motive to commit the offenses alleged in this case; or [¶] 3. The defendant had a plan or scheme to commit the offenses alleged in this case." Neither counsel objected after the court's recitation.

The court did not instruct the jury with CALCRIM No. 375 regarding the use of uncharged offense to prove identity, intent, common plan, etc. under section 1101(b). Rather, the court instructed with a modified version of CALCRIM No. 852 that included portions of CALCRIM No. 375 and told jurors it could use the uncharged domestic violence evidence not only on the counts pertaining to Michelle, but on all counts, including counts 12 and 13, the assault with a firearm and criminal threats charges as to Maria. The jury later returned guilty verdicts on counts 12 and 13.

2. *Analysis*

Megown complains that the trial court made several instructional errors regarding the uncharged acts evidence. He contends the court erroneously instructed the jury that it could consider prior acts of domestic abuse in reaching its verdict on counts 12 and 13 involving Maria. As discussed *ante*, the uncharged acts evidence was admissible as to Maria (*ante*, pt. I.C.1.), thus the trial court did not err when instructing the jury on its use.

In a related argument, Megown claims that the trial court erred in omitting a bracketed portion from CALCRIM No. 375 from the hybrid version of CALCRIM No.

17

852 that it used. CALCRIM No. 375 is the pattern instruction pertaining to the use of evidence admitted under section 1101(b). This instruction contains a bracketed sentence stating: "[Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.]" Megown acknowledges that a use note for CALCRIM No. 375 provides that the bracketed sentence should not be given where, as here, "the court is also instructing under . . . section . . . 1109." (Bench Notes, CALCRIM No. 375.) Nonetheless, he claims the court should have provided the bracketed sentence because the jury could not use the uncharged crimes evidence to conclude that he had a predisposition to commit the crimes against Maria. However, Megown's act of pointing a gun at Maria and threatening to kill her, committed in Michelle's presence, was a crime that involved domestic violence. (*Ante*, pt. I.C.1.) Thus, the jury could properly use this evidence to infer that Megown had a propensity to commit domestic violence.

Megown also claims that the trial court made the modified version of CALCRIM No. 852 "confusing" by moving a sentence which stated that the People must "prove each charge and allegation beyond a reasonable doubt" to the end of the instruction, instead of keeping this language immediately after recitation of the charged offenses. Megown does not explain how moving this sentence changed anything as the instruction still stated that the People must prove all charged crimes and allegations beyond a reasonable doubt, a concept that was further emphasized in CALCRIM No. 220. A jury is presumed to follow the instructions given, and Megown offered no reason for us to conclude that this presumption was overcome in this case. (*People v. Jackson* (2014) 58 Cal.4th 724, 767.)

18

Finally, Megown notes that the modified version of CALCRIM No. 852 provided to the jury at the end of trial did not list the 1999 incident with the other uncharged incidents. Megown claims that the trial court's omission "left [the jury] with no handle on what to do" with this evidence. While Megown is correct that the 1999 incident was not listed in CALCRIM No. 852, the instruction did not tell the jury that the uncharged conduct evidence was limited to those instances listed in the instruction, only that the uncharged conduct evidence "involve[d]" the listed incidents. Moreover, Megown's argument ignores that the court specifically preinstructed the jury with a modified version of CALCRIM No. 852 immediately before Michelle testified. Additionally, after Michelle testified that the abuse began in 1999, the trial court told the jury, "This is part of the uncharged conduct that I was telling you about. You know how to evaluate and what the burden of proof is as to this incident." Thus, even assuming error in not listing the 1999 incident, the assumed error is harmless as it is inconceivable that the jurors confused the 1999 incident with the charged crimes that occurred 16 years later.

B. *Assault with Firearm Instruction*

1. *Additional background*

Without objection, the trial court instructed the jury with CALCRIM No. 875 regarding assault with a semiautomatic firearm. As relevant here, the instruction provided:

> "The defendant is charged in Counts 11, 12 and 14 with assault with a semiautomatic firearm in violation of Penal Code section 245.
>
> "To prove that the defendant is guilty of these charges, the People must prove that:

"1. [For Counts 11, 12, and 14, t]he defendant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a *person*;

"2. The defendant did the act willfully;

"3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in application of force to *someone*;

"AND,

"4. When the defendant acted, he had the present ability to apply force with a semi-automatic firearm to a *person*." (Italics added.)

The court also instructed with CALCRIM No. 3515, which states, "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." The verdict forms also identified each count and its corresponding victim.

2. *Analysis*

Megown argues that the trial court erred by failing to modify CALCRIM No. 875 regarding assault with a semiautomatic firearm, claiming that the error affected his substantial rights and is not forfeited by his counsel's failure to request modification. He asserts that, if we find his claim was forfeited by the failure to object below, he received ineffective assistance of counsel. Megown concedes that the instruction correctly stated the law in general terms, but claims that it does not correctly state the law in the context of this case because he was charged with assault with a semiautomatic firearm against two people, Michelle and Maria. The instruction, however, indicated that he could be

20

convicted if his acts would directly and probably result in application of force to "someone."

He claims the instruction does not indicate that there must be an application of force as to each victim to support a guilty verdict as to that victim. Thus, following the letter of the instruction, he claims the jury could have concluded that the gun was pointed only at one person but, because the gun was pointed at "someone," the evidence was sufficient to establish assault with a semiautomatic firearm on both victims. Finally, he argues that the error was not harmless beyond a reasonable doubt because the first jury hung on the two counts after Maria's arrival which shows several members of the jury did not believe either Maria or Michelle, or both of them.

Generally, a defendant who believes that an instruction is erroneous or requires clarification must request correction or clarification of the instruction to avoid forfeiting the issue on appeal. (*People v. Carrington* (2009) 47 Cal.4th 145, 189.) Where a defendant did not object to the instructions, the contention is forfeited unless the instruction affected the defendant's substantial rights. (Pen. Code, § 1259; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.) Substantial rights are equated with a miscarriage of justice, which results if it is reasonably probable the defendant would have obtained a more favorable result had the correct instruction been given. (*People v. Christopher*, at pp. 426-427.) We consider Megown's argument on its merits because "[a]scertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.) Additionally, to resolve Megown's claim

21

that his trial counsel rendered ineffective assistance by failing to object or request modification of the instruction, we must address the merits of the issue.

We review a claim of instructional error de novo.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  "In considering a claim of instructional error we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys.  The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights."  (*People v. Andrade* (2000) 85 Cal.App.4th 579, 585.)  Where the "determination of error depends on the meaning communicated by an instruction, we must ascertain how a hypothetical 'reasonable juror' would have, or at least could have, understood the words in question."  (*People v. Mickey* (1991) 54 Cal.3d 612, 670.)  " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' "  (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)  Additionally, we interpret the given instructions " 'so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' "  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

Here, considering the instructions as a whole, in light of the evidence presented at trial and the verdict forms, there is no reasonable likelihood that the jury understood CALCRIM No. 875 as allowing it to erroneously believe that pointing the gun at Michelle was sufficient to show an assault against Maria.

The court told the jurors that each count was a separate crime, that they must consider each count separately, and that they must return a separate verdict for each

22

count.  (CALCRIM No. 3515.)  (See *People v. Merriman* (2014) 60 Cal.4th 1, 48-49 [absent contrary showing, jury presumed to follow instructions to consider each count separately].)  In turn, the verdict forms identified each firearm count, its corresponding victim, and, as to the counts involving Michelle, whether the assault occurred before or after Maria arrived.  The evidence presented to the jurors also described three separate assaults.  First, the assault against Michelle before Maria arrived when Megown pointed the gun at her with his finger on the trigger and stated, "I'm going to kill you."  Next, the assaults against Michelle and Maria occurred when Megown alternated pointing the gun at each victim's forehead while threatening to kill them.  As instructed, a reasonable juror would have considered each of the charged crimes separately in deciding whether the People met its burden as to each count.

Moreover, during closing argument the prosecutor emphasized that for the counts alleging assault with a semiautomatic firearm there were two victims and different time periods when the crimes occurred.  To the extent the jury could have interpreted CALCRIM No. 875 in the manner Megown suggests, the prosecutor's closing arguments correctly focused the jury's attention on Megown's acts against each victim.  (See *People v. Kelly* (1992) 1 Cal.4th 495, 524-527 [closing argument can correct any potential misunderstanding of applicable law].)

Megown correctly asserts that a bench note for CALCRIM No. 875 states, based on *People v. Velasquez* (2012) 211 Cal.App.4th 1170, 1176-1777 (*Velasquez*), that "[i]f the charging document names more than one victim, modification of this instruction *may be necessary* to clarify that each victim must have been subject to the application of

23

force." (Italics added.) However, *Velasquez* is factually distinguishable. There, the defendant was convicted of five counts of assault with a firearm after firing 10 shots at a home garage when one person was in the garage and four other individuals were in other areas of the home. (*Id.* at pp. 1174-1175.) On appeal, the defendant argued that CALCRIM No. 875 improperly allowed the jury to convict him of the four assault counts for the people located inside the home simply because the one person in the garage was at risk of being struck by a bullet. (*Id.* at p. 1176.) The reviewing court agreed that the reference in CALCRIM No. 875 to a "person" and "someone," rather than to the victim by name, might have misled the jury to believe the prosecutor was not required to prove defendant's shooting into the garage would directly and probably result in application of force to each victim named in each count. (*Velasquez,* at p. 1177.)

Here, it is not reasonably likely that the jury understood the instruction in the matter Megown suggests because each count named the victim and timeframe, and the prosecutor discussed the evidence showing that Megown pointed the gun twice at Michelle (before and after Maria's arrival) and once at Maria. Thus, even assuming the trial court erred by not modifying CALCRIM No. 875, the assumed error was harmless beyond a reasonable doubt on this record. Moreover, what the first jury may have thought regarding these counts is irrelevant to the prejudice analysis for the second trial.

### III. *THERE WAS NO CUMULATIVE ERROR*

Megown contends that the cumulative effect of the court's alleged evidentiary and instructional errors deprived him of a fair trial on the counts involving Maria. "Under the cumulative error doctrine, the reviewing court must 'review each allegation and assess the

cumulative effect of any errors to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence.' " (*People v. Williams* (2009) 170 Cal.App.4th 587, 646.) "In examining a claim of cumulative error, the critical question is whether defendant received due process and a fair trial." (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1068.)

We have found no errors, but assumed errors by not listing the 1999 incident in CALCRIM No. 852 (*ante,* pt. II.A.2) and not modifying CALCRIM No. 875 (*ante*, pt. II.B.2). We concluded, however, that both assumed errors were harmless. Accordingly, neither error is significant, and when considered together they did not affect the fairness of Megown's trial. (See *People v. Cain* (1995) 10 Cal.4th 1, 82 [a defendant is "entitled to a fair trial, not a perfect one"].)

Moreover, the jury's guilty verdicts on the crimes arising out of the 2015 incident show it believed Michelle and Maria's version of the incident. It is not reasonably likely the jurors would have convicted Megown of the crimes arising out of the 2015 incident as to Michelle, but not as to Maria, had the trial court instructed the jury that the prior domestic violence crimes evidence was not to be considered as to the crimes alleged against Maria, or modified CALCRIM Nos. 375 and 875 as argued. (*Watson*, *supra*, 46 Cal.2d at p. 836.) There was no cumulative error in this case that deprived Megown of a fair trial.

## IV. *PENAL CODE SECTION 654 BARS SEPARATE SENTENCES FOR COUNTS 10 AND 11*

The trial court stayed the sentences on counts 13 and 15, the criminal threats counts as to Michelle and Maria after Maria arrived, under Penal Code section 654. The court concluded that these charges had the same object as counts 12 and 14, the related assault-with-a-firearm charges for both victims. Megown contends that the trial court should have also stayed his conviction on count 10 (criminal threats against Michelle prior to Maria arriving) under Penal Code section 654 because his act of threatening Michelle (count 10) and assaulting Michelle with a firearm prior to Maria arriving (count 11) constituted a single indivisible transaction with one purpose. The People disagree, claiming that although Megown always had the gun pointed at Michelle, his threat to shoot her if the door moved suggested his intent switched from dominating Michelle with violence to preventing her from fleeing. The People are parsing Megown's objectives too finely.

Although Megown argued below that Penal Code section 654 applied to other counts, he did not argue that it applied to counts 10 and 11. In sentencing on these counts the court did not address section 654, but noted "There is a space of time between counts 11 and count 10. . . . I think in my discretion, I could run that consecutive, but I'm choosing to run that concurrent."

Penal Code section 654 errors "are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal." (*People v. Perez* (1979) 23 Cal.3d 545, 549, fn. 3.) Penal Code section 654 bars multiple

26

punishment for convictions that arise out of an indivisible course of conduct and that are committed pursuant to a single criminal intent or objective. (*People v. Correa* (2012) 54 Cal.4th 331, 335-336.)

The purpose of Penal Code section 654 is "to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) In any Penal Code section 654 inquiry, the court must initially ascertain the defendant's objective and intent. (*People v. Porter* (1987) 194 Cal.App.3d 34, 38.) If all the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) But if a defendant had separate objectives that "were either (1) consecutive even if similar or (2) different even if simultaneous" (*People v. Britt* (2004) 32 Cal.4th 944, 952), multiple punishment is permissible, even if the crimes shared common acts or were parts of an otherwise indivisible course of conduct. (*Ibid*.) In applying Penal Code section 654, the defendant's objectives must not be "parse[d] . . . too finely." (*Britt*, at p. 953.) "Whether the defendant maintained multiple criminal objectives is determined from all the circumstances and is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it." (*Porter*, at p. 38.)

Here, substantial evidence does not support the trial court's implied finding that Megown had different objectives when he assaulted Michelle with a firearm (count 11) and threatened Michelle (count 10) prior to Maria's arrival. Before Maria's arrival,

Megown strangled Michelle on the couch, but she was able to break free.  Megown then retrieved his gun and pointed it at Michelle with his finger on the trigger.  As he did this Michelle noted that "he said I'm going to kill you.  And then he said if that door moves I'm putting a round through you."  Michelle later stated that after Megown's first threat to kill her, he threatened to "put a round through [her]" if the door moved because she had dropped her eye contact from him and looked at the door.  During this entire time, Megown had the gun pointed at Michelle.

Michelle's testimony shows a continuous and indivisible course of conduct by Megown where he assaulted Michelle with a firearm as he threatened to kill her and then threatened to put "a round through" her if the door moved.  These threats constituted domestic violence because they placed Michelle in reasonable fear of imminent serious bodily injury to herself.  The People argue that the second threat suggested Megown's intent switched from dominating Michelle with violence to preventing her from fleeing. This distinction, in our judgment, is artificial as Megown's intent and objective during this entire episode was to dominate Michelle by instilling fear.  Accordingly, the trial court erred by not staying the sentence on count 10, the criminal threats charge.

V.  *ABSTRACT OF JUDGMENT AND SENTENCING MINUTE ORDER*

The trial court ordered that count 15 for criminal threats against Michelle and its attendant firearm enhancements (Pen. Code, §§ 12022, subd. (a)(1) & 12022.5, subd. (a)) should be stayed under Penal Code section 654 because they had the same object as count 14 for assault with a firearm against Michelle.  However, Megown notes, and the People concede, that the abstract of judgment and sentencing minute order do not correctly

28

indicate the stay on count 15. Where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.) Accordingly, we order the trial court to correct the abstract of judgment and sentencing minute order to reflect the stay on count 15. (*Id.* at p. 186.)

## VI. *FIREARM ENHANCEMENT*

The jury found Megown guilty of multiple counts of assault with a firearm and criminal threats. With respect to each of those counts the jury found that he had used a firearm within the meaning of Penal Code section 12022.5, subdivision (a). The firearm enhancements added a total of five years four months to Megown's sentence.

Prior to January 1, 2018, an enhancement under either Penal Code section 12022.5 or 12022.53 was mandatory; it could not be stricken in the interests of justice. (See, e.g., *People v. Kim* (2011) 193 Cal.App.4th 1355, 1362-1363, citing former Pen. Code § 12022.53, subd. (h).) However, effective January 1, 2018, Penal Code section 12022.53, subdivision (h) provides that "[t]he court may, in the interest of justice pursuant to [Penal Code] Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."

In his supplemental opening brief Megown contends that remand is necessary to give the trial court an opportunity to exercise its discretion on whether to strike the firearm enhancement. The People concede that amended Penal Code section 12022.53

applies retroactively and gives a trial court the discretion to strike a previously mandatory firearm enhancement. We agree.

Although amendments to the Penal Code generally do not apply retroactively (Pen. Code, § 3), our Supreme Court has recognized an exception for an amendment that reduces the punishment for a specific crime. (See *In re Estrada* (1965) 63 Cal.2d 740, 745.) The Supreme Court has extended the *Estrada* holding to amendments that give the trial court discretion to impose a lesser sentence even if it does not necessarily reduce a defendant's punishment. (*People v. Francis* (1969) 71 Cal.2d 66, 75-76.) Accordingly, the amendment applies retroactively to persons, like Megown, whose convictions are not yet final on appeal. (*People v. Woods* (2018) 19 Cal.App.5th 1080, 1090-1091.)

Citing *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, the People argue that remand for resentencing is not appropriate because no reasonable court would exercise its new discretion to strike Megown's firearm enhancements. In making this argument the People note the trial court's statements at the sentencing hearing that there were multiple factors in aggravation and the case was "middle-term type of conduct" for the purpose of the firearm enhancements. In addressing a trial court's discretion to strike a serious or violent felony conviction under the three strikes law, the *Gutierrez* court concluded that remand would not serve any purpose in that case because the trial court had "stated that imposing the maximum sentence was appropriate" (*id.* at p. 1896) and also imposed "two additional discretionary one-year enhancements." (*Ibid*.) Here, contrary to the People's argument, the record does not reflect that remand would be "fruitless and is unnecessary."

The court selected count 11 (assault with a semiautomatic firearm on Michelle) as the principal term. The comments it made regarding aggravating and mitigating circumstances were in regard to sentencing on this count. The court also chose the middle term for the attached firearm enhancement based on Megown's act of pointing the gun at Maria's head. Nothing in the record indicates whether the trial court would have imposed the firearm enhancements had it possessed the discretion not to do so. The matter must be remanded to provide the court with the opportunity to exercise its discretion. (*People v. Billingsley* (2018) 22 Cal.App.5th 1076, 1082 [matter remanded for resentencing even though trial court suggested it would not have stricken firearm enhancement even if it had that discretion as the court was not aware of the full scope of the discretion it now has under the amended statute].) We express no opinion regarding how the court should exercise its discretion under Penal Code section 12022.53, subdivision (h).

DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the matter is remanded to the trial court with directions to (1) stay the sentence on count 10 under Penal Code section 654, and (2) exercise its discretion whether to strike or dismiss the firearm enhancements or punishment under Penal Code sections 1385, 12055.2, subdivision (c) and 12022.53, subdivision (h), and, if appropriate following exercise of

31

that discretion, to resentence defendant accordingly. We further direct the trial court to correct its minute order of the previous sentencing hearing to indicate that the sentence on count 15 is stayed and, following resentencing, to prepare an amended abstract of judgment reflecting all modifications. The court shall forward a certified copy of this amended abstract to the Department of Corrections and Rehabilitation.


NARES, Acting P. J.

WE CONCUR:


DATO, J.


GUERRERO, J.

CERTIFIED FOR PARTIAL PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D072019 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD264165) |
| v. | ORDER MODIFYING OPINION AND CERTIFYING FOR PARTIAL PUBLICATION |
| KEVIN MEGOWN, | |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 24, 2018, be modified as follows:

The introductory paragraphs starting on page 1 immediately following the counsel listing and ending on page 3 just prior to the factual background heading are deleted and replaced as follows:

> Kevin Megown beat Michelle R., the mother of his child. After one incident where Michelle's mother, Maria R., came to aid her, Megown threatened to kill both of them as he held a gun. A jury convicted Megown of violating a domestic violence restraining order (Pen. Code, § 273.6, subd. (a)), possessing an assault weapon (Pen. Code, § 30605, subd. (a)), and inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)). It also found true allegations that he inflicted great bodily injury (Pen. Code, § 1192.7,

33

subd. (c)(8)) in circumstances involving domestic violence (Pen. Code, § 12022.7, subd. (e)). The jury also acquitted on some counts and could not reach a verdict on several others. Megown was retried on some of the unresolved counts.

A second jury convicted Megown of inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)), three counts each of criminal threats (Pen. Code, § 422) and assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)). The jury also found true allegations that Megown personally used a firearm (Pen. Code, §§ 1192.7, subd. (c)(8), 12022.5, subd. (a)). The trial court sentenced Megown to a total term of 17 years in prison.

Megown claims the trial court erred by: (1) admitting past uncharged acts of domestic violence under Evidence Code section 1109 with respect to the counts involving Maria, (2) admitting evidence of abuse that occurred more than 10 years before the charged crimes, (3) giving CALCRIM No. 875 (assault with a firearm) without modification, and (4) failing to stay the sentence on one of the criminal threats counts under Penal Code section 654. He also claims that the abstract of judgment should be amended to accurately reflect the trial court's oral pronouncement and that the cumulative effect of the above errors require reversal. In a supplemental brief, Megown argues that the matter must be remanded to the trial court so it may exercise its discretion in determining whether to strike the firearm enhancements.

In the published portion of this opinion, part I, we conclude the trial court did not err in admitting uncharged crimes evidence under Evidence Code section 1109 with respect to the counts involving Maria because the circumstances of these crimes involved domestic violence. We also conclude that the trial court did not err in admitting evidence of abuse that occurred more than 10 years before the charged crimes.

In the unpublished portions of our opinion, parts II through VI, we conclude that: (1) the trial court erred when it failed to stay the sentence on one of the criminal threats counts under Penal Code section 654, (2) the abstract of judgment should be corrected, and (3) the matter must be remanded to the trial court to exercise its discretion in determining whether to strike the firearm enhancements. We reject Megown's remaining arguments.

There is no change in the judgment.

The opinion in the above-entitled matter filed on September 24, 2018, was not certified for publication. It appearing the opinion meets the standard for publication certified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for partial publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion, except for parts II through VI of the Discussion, meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and replaced with the words "Certified for Partial Publication" followed by a footnote designated with an asterisk, which shall read: "Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication except for parts II through VI of the Discussion." It is further ordered the opinion herein be published in the Official Reports in conformity with this order.


NARES, Acting P. J.

Copies to: All parties

35